# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KIT-USA, INC., | ) |
|     Plaintiff, | ) |
| v. | ) Civil No. <br> ) 13-13280-FDS |
| PAYBYCLICK CORPORATION and <br> MARVIN T. LING, | ) |
|     Defendants. | ) |

## MEMORANDUM AND ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION TO STRIKE CLAIM OF TRIAL BY JURY

**SAYLOR, J.**

This is a dispute over the repayment of five loans. Plaintiff KIT-USA, Inc., is the holder of five promissory notes executed by defendant PayByClick Corporation ("PBC"). The five notes are for $750,000; $761,000; ¥50,000,000; ¥50,000,000; and ¥100,000,000. Defendant Marvin T. Ling allegedly guaranteed all five notes. Plaintiff has brought suit for breach of contract against defendants, alleging that it has not been paid for the notes and that the notes have become due. Jurisdiction is based on diversity of citizenship.

Defendants have moved for partial summary judgment, contending that their obligations under the first, second, and fifth notes were extinguished because they were converted into PBC stock. They also contend that Ling's guaranty does not cover the other two notes. Plaintiff has moved to strike defendants' demand for a trial by jury.

For the following reasons, the motion for partial summary judgment will be denied. The motion to strike defendants' demand for a trial by jury will be granted.

## I. Background

### A. Factual Background

The following facts are undisputed or stated in the light most favorable to the non-moving party.

KIT-USA, Inc. is a Massachusetts corporation with a principal place of business in Malden, Massachusetts. (Compl. ¶ 1). Toshio Izumiya is the chairman of the board of directors of KIT. (Izumiya Aff., Docket No. 20, Ex. I ¶ 4).

PayByClick Corporation is a Delaware corporation that appears to have a principal place of business in Scottsdale, Arizona. (Compl. ¶ 2).[1] Marvin Ling is the president and chief executive officer and a director of PBC, and a citizen of Arizona. (Nov. 1, 2005, Board Minutes, Docket No 17, Ex. I; Compl. ¶ 3).

In 2000 or 2001, Ling asked Izumiya for an investment in his company. (Izumiya Aff. ¶ 6). Izumiya agreed to make a loan from KIT to PBC.

On June 5, 2001, KIT and PBC signed a loan agreement for $750,000, to be repaid within two years, and secured by a promissory note executed and delivered by PBC to KIT. (Izumiya Aff., Exs. A, B). The agreement included a provision that allowed KIT to convert the loan into PBC stock. (*Id.* Ex. B). The promissory note stated that the parties expressly "waive[] . . . any right . . . to a trial by jury of any dispute arising under or relating to this note and agrees that any such dispute shall be tried before a judge sitting without a jury." (*Id.*).

On June 5, 2001, Ling also executed and delivered a guaranty of PBC's obligations to

---

[1] The complaint states that "[i]t is averred and believed that [PBC] has a business address [in] . . . Scottsdale, Arizona." (Compl. ¶ 2). Defendants' notice of removal does not state where PBC has its principal place of business. Accordingly, the Court will direct defendants to file a notice establishing PBC's principal place of business for the purposes of determining whether it has subject-matter jurisdiction over this matter.

KIT. (Guaranty, Docket No. 17, Ex. C). The guaranty stated:

> For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and in consideration of KIT-USA, Inc. (hereinafter called the "Lender") having made, or now or in the future making, advances or otherwise giving credit to PayByClick Corporation, . . . (hereinafter called the "Borrower"), however such advances or credit may be made or evidenced, the undersigned does hereby unconditionally guarantee to Lender, its successors and assigns, full and prompt payments and performance of all present and future obligations of Borrower to Lender, including all renewals and extensions thereof or substitutions therefor.
>
> . . .
>
> Notice of acceptance of and action taken by Lender from time to time under this Guaranty are hereby waived, and this Guaranty shall operate as continuing, absolute and irrevocable Guaranty covering all obligations of Borrower to Lender (and renewals and extensions thereof or substitutions therefor) now existing or hereafter arising.
>
> . . .
>
> For the purposes of this Guaranty, the term "obligations" shall mean and include, without limitation, the payment and performance of all loans, indebtedness, notes, liabilities . . . and amounts, owing by Borrower to Lender at any time, each of every kind, nature and description, and whether secured or unsecured, direct or indirect (that is, whether the same are due directly by Borrower to Lender; or are due indirectly by Borrower to Lender as endorser or guarantor, or as obligor of obligations due to third persons, firms, or corporations which have been endorsed or assigned to Lender; or otherwise), absolute or contingent, due or to become due, now existing or hereafter contracted.

(*Id.* at 1-2).

Izumiya later agreed to make another loan from KIT to PBC. (Izumiya Aff. ¶ 7). On April 29, 2002, KIT and PBC signed a loan agreement for $761,000. (*Id.*, Exs. C, D). That loan, like the first, was to be repaid within two years and was secured by a promissory note to KIT for $761,000. It also included a provision that allowed KIT to convert the loan into PBC stock and waived the parties' rights to trial by jury on any dispute arising under the note. (*Id.*, Exs. C, D; Note 2, Docket No. 17, Ex. D).

Ling again asked Izumiya for additional funds. (Izumiya Aff. ¶ 9). This time, Izumiya

3

and his son decided to make two personal loans of ¥50,000,000 to PBC, for a total of ¥100,000,000. (*Id.*). In October 2002 and January 2003, Izumiya and his son signed two separate loan agreements with PBC. (*Id.*, Exs. E, F, G, H). These agreements had essentially the same terms as the previous loan agreements between KIT and PBC. (*Id.*). The loans were secured by promissory notes from PBC to Izumiya and his son, respectively. (Note 3, Docket No. 17, Ex. E; Note 4, Docket No. 17, Ex. F).

Shortly afterward, Ling asked Izumiya for a further loan of ¥100,000,000. (Izumiya Aff. ¶ 10). KIT made this last loan of ¥100,000,000 to PBC on April 1, 2003. (*Id.*, Exs. I, J). The loan agreement contained the same terms as the other four, and was secured by a promissory note from PBC to KIT. (*Id.*; Note 5, Docket No. 17, Ex. G).

PBC and Ling were represented by counsel when they entered into each of the five loan agreements. (Izumiya Aff. ¶ 9-10). Their attorney drafted the loan agreement papers for the Izumiya loans. (*Id.* ¶ 9).

On November 1, 2005, PBC's board of directors purportedly held a meeting. (Nov. 1, 2005, Board Minutes). According to the minutes of the meeting, the directors authorized the conversion of the three KIT promissory notes into PBC stock. (*Id.*). Those minutes are not signed. (*Id.*). The minutes also indicate that Izumiya attended the meeting, which he denies. (*Id.*; Izumiya Aff., Ex. I ¶ 14).

On November 15, 2005, the president of KIT, C. Henry Kezer, signed a notice of election to convert, authorizing KIT to convert its loans to PBC into PBC stock. (Notice of Election to Convert, Docket No. 17, Ex. J). Those documents did not actually convert the loans into PBC stock; they merely authorized KIT to undertake the conversion. (Kezer Aff., Docket No. 20, Ex.

4

II ¶ 14).

In 2006, Kezer and Andrew Ling, the vice president of PBC, exchanged several e-mails concerning the conversion of KIT's loans into PBC stock. (*Id.*, Exs. I, J). The conversion process was never finalized, as Kezer never relinquished the original KIT promissory notes to PBC and KIT never received a certificate representing new shares of PBC stock. (*Id.* ¶ 20). A PBC year-end balance sheet dated December 31, 2007, lists the KIT notes as liabilities. (*Id.*, Ex. L).

The deadlines for repayment of the loans from Izumiya and his son were extended by addendum to December 31, 2010, and January 1, 2011, respectively. (Izumiya Aff., Exs. K, L). The addenda ratified the original terms of the loans. (*Id.*).

On December 17, 2010, Izumiya and his son made a demand on PBC to pay back their loans. (*Id.*, Exs. M, N). The demand was made on PBC as the borrower and Ling as the guarantor of the loans. (*Id.*). Ling did not dispute that he was the guarantor of the loans. (*Id.* ¶ 12).

On June 28, 2013, Izumiya and his son assigned the two ¥50,000,000 promissory notes they owned to KIT. (Docket No. 17, Exs. N, O). The assignments both state that the notes were assigned with all "right, title and interest therein to KIT-USA, Inc." (*Id.*).

B.     **Procedural Background**

Plaintiff filed the complaint in this case in Middlesex Superior Court on November 18, 2013. The complaint alleges claims of breach of contract against defendant PBC for the two Izumiya notes, and one claim of guaranty against defendant Ling for all five notes. Defendants removed the case to this Court on December 27.

On March 21, 2014, defendants filed a partial motion for summary judgment. They contend that they are entitled to judgment on the claim of guaranty because (1) the KIT promissory notes were extinguished by their conversion into PBC stock and (2) Ling's June 5, 2001 guaranty did not extend to the two Izumiya promissory notes.

On April 28, plaintiff filed a motion to strike defendants' claim of trial by jury.

## II. Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

### III. Analysis

#### A. Conversion of the KIT Promissory Notes

Defendants first contend that plaintiff cannot recover money under the KIT promissory notes because they were converted into PBC stock. Plaintiff contends the notes were never converted.

The KIT promissory notes contain a provision allowing their conversion into PBC stock, and it appears that the directors of KIT and PBC authorized a conversion. However, e-mails between officers of the two companies, as well as PBC's 2007 year-end balance sheet, suggest the conversion never took place. At a minimum, there is a genuine dispute as to whether the KIT notes were converted into PBC stock. Defendants' motion for partial summary judgment will therefore be denied as to that issue.

#### B. Guaranty of the Izumiya Promissory Notes

Defendants also contend that Ling is not responsible for repayment of the Izumiya promissory notes because the guaranty he agreed to on June 5, 2001, does not extend to those notes. They contend that interpreting the guaranty to cover the Izumiya notes would allow KIT to recover, from Ling, any debt PBC owed if that debt was assigned to KIT.

Under Massachusetts law, "[t]he words of a contract must be considered in the context of the entire contract rather than in isolation. When the words of a contract are clear, they must be construed in their usual and ordinary sense." *Brigade Leveraged Capital Structures Fund Ltd. v. PIMPCO Income Strategy Fund*, 466 Mass. 368, 374 (2013) (quoting *General Convention of New Jerusalem in the U.S. of Am., Inc. v. MacKenzie*, 449 Mass. 832, 835 (2007)).

The June 5 guaranty covers "obligations" between KIT and PBC, which are defined as

"the payment and performance of all loans, indebtedness, notes, liabilities, . . . and amounts," whether "direct or indirect." (Guaranty at 2). An "indirect" obligation is defined as, among other things, money due to KIT by PBC "as obligor of obligations due to third persons, firms, or corporations which have been endorsed or assigned to [KIT]; or otherwise." (*Id.*). The guaranty covers all obligations "due or to become due, now existing or hereafter contracted." (*Id.*).

Under the plain language of the loan agreements, PBC was required to repay Izumiya and his son for the loans they made. Those obligations were assigned to KIT. The Ling guaranty covers obligations that are owed by PBC and assigned to KIT, even those incurred after the guaranty was executed. The Ling guaranty therefore covers the Izumiya notes because they are "obligations" assigned to KIT.

Accordingly, defendants' motion for partial summary judgment will be denied.

C. **Waiver of Trial by Jury**

Plaintiff has moved to strike the portion of defendants' answer where they "demand trial by jury on all issues so triable." (Answer at 5).[2] It contends that defendants waived their right to a jury trial on any claims arising out of or relating to the five loans in this case.

It is well-settled that "[t]here is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed. In a diversity jurisdiction suit, the enforcement of a jury waiver is a question of federal, not state, law." *Medical Air Tech Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18 (1st Cir. 2002). "In general . . . [courts] look to the plain language of the contract's jury waiver to determine whether it unambiguously covers the claims asserted." *Id.* at 19. Moreover, "courts will not enforce the jury waiver unless it was entered into

---

[2] A motion to strike can be used to strike a demand for trial by jury. *See, e.g.*, *Medical Air Tech. Corp. v. Marwan Inv., Inc.*, 303 F.3d 11, 18-19 (1st Cir. 2002).

knowingly and voluntarily." *Id.*

The five promissory notes at issue in this case all state:

> MAKER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS NOTE AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

(Notes 1-5 at 1). The Ling guaranty states:

> GUARANTOR AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS GUARANTY OR THE AGREEMENTS AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

(Guaranty at 2).

The plain language of the promissory notes and the guaranty express a knowing, voluntary, and intentional waiver of the right to a jury by defendants. Defendants were represented by counsel when entering into the loan agreements, and defendants' attorney drafted the loan agreements, including the waiver of trial by jury.

Defendants contend that the jury waiver should not be enforced because there were no negotiations or discussions about the waiver between the parties to the contract. That appears to be a contention that the jury waiver should be construed against plaintiff because it is a contract of adhesion. "When construction of [a contract of adhesion] is at issue, it is to be construed strictly against the drafter. Generally, however, such contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances." *Chase Commercial Corp. v. Owen*, 32 Mass. App. Ct. 248, 253 (1992) (citing *Lechmere Tire &*

*Sales Co. v. Burwick*, 360 Mass. 718, 720-21, n.3 (1972)). Even assuming the notes in this case are contracts of adhesion, they would be construed against defendants because their attorney drafted the notes. They would also still be enforceable.

Defendants also contend that the jury waiver should not be enforced because "[p]laintiff is part of a large multinational corporation, while [d]efendants are an individual and a small [c]orporation." (Def. Opp. to Mot. to Strike at 4-5). That appears to be a contention that the jury waiver is invalid because it is unconscionable. "[A] contract [is] determined unenforceable because unconscionable when the sum total of its provisions drives too hard a bargain for a court of conscience to assist." *Miller v. Cotter*, 448 Mass. 671, 679 (2007) (internal quotations omitted). "The principle is one of prevention of oppression and unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." *Zapatha v. Diary Mart, Inc.*, 381 Mass. 284, 292-93 (1980) (quoting Mass. Gen. Laws ch. 106, § 2-302 cmt. 1) (internal alteration omitted). Here, even assuming that there was a large disparity between the bargaining power of the parties to the notes, there is nothing about the jury waiver provision or the circumstances surrounding the negotiations over the notes that suggests oppression or unfair surprise.

Finally, defendants contend that the waivers in the Izumiya notes cannot be enforced by plaintiff because it is an assignee of the notes and the notes only refer to "maker" and "lender." However, the notes define "lender" as "Mr. Toshiaki Izumiya, [his] successors or assigns." (*E.g.,* Izumiya Aff., Ex. G ¶ 10). Moreover, it is well-settled that "an assignee of contract rights stands in the shoes of the assignor." *Ford Motor Credit Co. v. Morgan*, 404 Mass. 537, 545 (1989) (quoting *Graves Equip., Inc. v. M. DeMatteo Constr. Co.*, 397 Mass. 110, 122 (1986)).

Therefore, the plain terms of the jury waivers in the Izumiya notes can be enforced by plaintiff.

Accordingly, the motion to strike defendants' claim for a trial by jury will be granted.

## IV. Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment is DENIED. Plaintiff's motion to strike defendants' claim for a trial by jury is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: June 27, 2014                                        United States District Judge